IN THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
IN AND FOR CITRUS COUNTY, FLORIDA

CASE NO. _2009 - C.A - 534_

VEOLIA WATER NORTH AMERICA OPERATING
SERVICES, LLC, a Delaware limited liability company
authorized to do business in the State of Florida, and
PROFESSIONAL SERVICES GROUP, INC., a Minnesota
corporation authorized to do business in the State of Florida,

                    Plaintiffs,

v.

BEVERLY HILLS WASTE MANAGEMENT CORPORATION,
a Florida corporation; ROLLING OAKS UTILITIES, INC.,
a Florida corporation; BEVERLY HILLS DEVELOPMENT
CORPORATION, a Florida corporation; ANCHOR PROPERTIES, INC.,
a Florida corporation; RONALD J. COLLINS, individually; and CITRUS
COUNTY, FLORIDA, a political subdivision of the State of Florida,

                    Defendants.

_____/

## VERIFIED COMPLAINT

COME NOW the Plaintiffs, VEOLIA WATER NORTH AMERICA OPERATING

SERVICES, LLC ("VEOLIA") and PROFESSIONAL SERVICES GROUP, INC. ("PSG"), by

and through their undersigned attorneys, and sue the Defendants, BEVERLY HILLS WASTE

MANAGEMENT CORPORATION ("BEVERLY HILLS"), A Florida corporation, ROLLING

OAKS UTILITIES, INC. ("ROLLING OAKS"), a Florida corporation, BEVERLY HILLS

DEVELOPMENT CORPORATION ("BHDC"), a Florida corporation, ANCHOR

PROPERTIES, INC. ("ANCHOR"), a Florida corporation, RONALD J. COLLINS, individually,

and CITRUS COUNTY, FLORIDA, a political subdivision of the State of Florida, and state as

follows:

- 1 -

## Allegations Common to All Counts of Complaint

1.     This is an action in which the amount in controversy exceeds $15,000.

2.     VEOLIA is a Delaware limited liability company authorized to conduct business in the State of Florida.

3.     PSG is a Minnesota corporation authorized to conduct business in the State of Florida.

4.     VEOLIA and PSG are sister entities under common ownership.

5.     ROLLING OAKS is a Florida corporation with its principal place of business in Citrus County, Florida.

6.     ROLLING OAKS is wholly owned by BEVERLY HILLS WASTE MANAGEMENT CORPORATION ("BEVERLY HILLS"), a Florida corporation.

7.     ROLLING OAKS operates a water and sewer system serving the residents of the Beverly Hills community in Citrus County, Florida.

8.     BEVERLY HILLS is a Florida corporation with its principal place of business in Citrus County, Florida.

9.     BEVERLY HILLS operates a solid waste collection and hauling system serving the residents of the Beverly Hills community in Citrus County, Florida. Based on information and belief, BEVERLY HILLS is wholly owned by BEVERLY HILLS DEVELOPMENT CORPORATION.

10.    BEVERLY HILLS DEVELOPMENT CORPORATION ("BHDC") is a Florida corporation with its principal place of business in Citrus County, Florida.

11.    ANCHOR PROPERTIES, INC. ("ANCHOR PROPERTIES") is a Florida corporation with its principal place of business in Citrus County, Florida. Based on information and belief, BHDC is wholly owned by ANCHOR PROPERTIES.

12.    RONALD J. COLLINS is an individual residing in Citrus County, Florida and who conducts business in Citrus County, Florida. Based on information and belief, RONALD J. COLLINS owns and/or controls, directly or indirectly, ANCHOR PROPERTIES, BHDC, BEVERLY HILLS and ROLLING OAKS.

13.    CITRUS COUNTY, FLORIDA is a political subdivision of the State of Florida.

14.    On or about July 12, 1994, PSG, BEVERLY HILLS and ROLLING OAKS entered into an Agreement Regarding Refinancing of Utility Systems, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.

15.    On or about July 12, 1994, BHDC entered into a Reimbursement Agreement in favor of PSG, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference.

16.    On or about July 12, 1994, an Expenses Reimbursement agreement was entered into by ROLLING OAKS, BEVERLY HILLS, ANCHOR PROPERTIES, BHDC and RONALD J. COLLINS, individually. A copy of the Expenses Reimbursement agreement is attached hereto as Exhibit "C" and incorporated herein by reference.

17.    On or about July 12, 1994, BHDC executed a Real Estate Mortgage in favor of PSG, which mortgage was recorded at Official Records Book 1041, page 1373, Public Records of Citrus County, Florida. A copy of the Mortgage is attached hereto as Exhibit "D" and incorporated herein by reference.

18.    The aforesaid Mortgage encumbers property located in Citrus County, Florida.

19.    In or before 2002, U.S. Filter and Operating Services, Inc. ("USFOS") assumed the operational duties of PSG under the agreement with ROLLING OAKS and BEVERLY HILLS.

20.    On or about May 1, 2002, USFOS and ROLLING OAKS entered into an Agreement for Operations, Maintenance and Capital Equipment Services (the "Rolling Oaks OMC Agreement"), a copy of which is attached hereto as Exhibit "E" and incorporated herein by reference.

21.    On or about May 1, 2002, USFOS and BEVERLY HILLS entered into an Agreement for Operations, Maintenance and Management Services (the "Beverly Hills OMM Agreement"), a copy of which is attached hereto as Exhibit "F" and incorporated herein by reference.

22.    On January 29, 2004, USFOS changed its name to Veolia Water North America Operating Services, Inc.  A copy of the state of Delaware certificate authorizing this name change is attached hereto as Exhibit "G" and by this reference made a part hereof.

23.    On July 6, 2004, Veolia Water North America Operating Services, Inc. converted from a corporate entity to a limited liability company and became Veolia Water North America Operating Services, LLC.  A copy of the state of Delaware certificate of conversion is attached hereto as Exhibit "H" and by this reference made a part hereof.

24.    Based upon the foregoing, the Plaintiffs currently possess all rights and obligations granted to USFOS and PSG under prior agreements and the prior mortgage given by BHDC and are the proper parties to enforce said rights by means of this action.

25.    All conditions precedent to the bringing of this action have occurred or have been waived.

### Count I –Breach of Beverly Hills OMM Agreement

26.    This is an action against BEVERLY HILLS for breach of the Beverly Hills OMM Agreement.

- 4 -

27.    The Plaintiffs reallege the allegations contained in Paragraphs 1 through 25 above as though fully set forth herein.

28.    Under the Beverly Hills OMM Agreement, BEVERLY HILLS is obligated to pay compensation to VEOLIA as set out in Section 4 of the agreement.

29.    Under Section 5 of the Beverly Hills OMM Agreement, BEVERLY HILLS is obligated to make payment on the 15th of each month for certain services and within 90 days after the end of each agreement year.  No notice, request or invoice is required to be made by VEOLIA.

30.    BEVERLY HILLS has failed to make the payments to VEOLIA required by the Beverly Hills OMM Agreement.

31.    Section 8.2 of the Beverly Hills OMM Agreement provides that VEOLIA may terminate the agreement for nonpayment of its invoices immediately with no written notice or opportunity for BEVERLY HILLS to cure.

32.    Although not required in the Beverly Hills OMM Agreement, VEOLIA sent written default notices to BEVERLY HILLS on January 8, 2009, requesting payment of the more than $122,983.60 due and owing as of that date. A copy of the default notice sent by VEOLIA is attached hereto as Exhibit "I" and incorporated herein by reference.

33.    BEVERLY HILLS has committed further defaults subsequent to the aforesaid notice and has failed and continues to refuse to uphold its obligation under the Beverly Hills OMM Agreement to compensate VEOLIA for the services it provides.

WHEREFORE, Plaintiffs pray for the entry of judgment against BEVERLY HILLS for all amounts owed through the time of judgment, plus statutory interest, attorney's fees and the

- 5 -

costs of this action, as well as such other and further relief as the Court may deem just and proper.

### Count II –Breach of Rolling Oaks OMC Agreement

34.    This is an action against ROLLING OAKS for breach of the Rolling Oaks OMC Agreement.

35.    The Plaintiffs reallege the allegations contained in Paragraphs 1 through 25 above as though fully set forth herein.

36.    Under the Rolling Oaks OMC Agreement, ROLLING OAKS employed the services of VEOLIA in the administration, management and operation of its water treatment and distribution facilities and waste water collection and treatment facilities.

37.    Under the Rolling Oaks OMM Agreement, ROLLING OAKS is obligated to pay compensation to VEOLIA as set out in Section 4 of the agreement.

38.    Under the Rolling Oaks OMC Agreement, ROLLING OAKS is obligated to make payment on the 15th of each month for certain services and within 90 days after the end of each agreement year.  No notice, request or invoice is required to be made by VEOLIA.

39.    ROLLING OAKS has failed to make the payments to VEOLIA required by the Rolling Oaks OMC Agreement.

40.    Section 8.2 of the Rolling Oaks OMC Agreement provides that VEOLIA may terminate the agreement for nonpayment of its invoice immediately with no written notice or opportunity for ROLLING OAKS to cure.

41.    Although not required in the Rolling Oaks OMC Agreement, VEOLIA sent written default notices to ROLLING OAKS on January 8, 2009, requesting payment of the more than $467,932.32 due and owing as of that date.  A copy of the default notice sent by VEOLIA is attached hereto as Exhibit "J" and incorporated here by reference.

- 6 -

42.    ROLLING OAKS has committed further defaults subsequent to the aforesaid notice and has failed and continues to refuse to uphold its obligation under the Rolling Oaks OMC Agreement to compensate VEOLIA for the services it provides.

WHEREFORE, Plaintiffs pray for the entry of judgment against ROLLING OAKS for all amounts owed through the time of judgment, plus statutory interest, attorney's fees and the costs of this action, as well as such other and further relief as the Court may deem just and proper.

### Count III – Breach of the Refinancing Agreement

43.    This is an action against BEVERLY HILLS and ROLLING OAKS for breach of the Refinancing Agreement.

44.    The Plaintiffs reallege the allegations contained in Paragraphs 1 through 25 above as though fully set forth herein.

45.    The Refinancing Agreement provided that VEOLIA would obtain a letter of credit in the amount of $1,000,000 in order to assist ROLLING OAKS in refinancing its utility system.

46.    VEOLIA has fulfilled its obligations with respect to the aforesaid letter of credit.

47.    Paragraph 9 of the Refinancing Agreement states that the market value of the collateral given by ROLLING OAKS and BEVERLY HILLS shall at all times have a fair market value of at least one hundred twenty-five percent (125%) of the face amount of the letter of credit. Therefore, the value of the collateral must be maintained at an amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000) as well as meeting certain other obligations.

48.    BEVERLY HILLS and ROLLING OAKS have failed to maintain the value of the collateral at the amount required by the Refinancing Agreement or to fully perform their other obligations.

- 7 -

49.    The failure of ROLLING OAKS and BEVERLY HILLS to maintain the minimum collateral value and meet their other obligations constitutes a default under the Refinancing Agreement and the Reimbursement Agreement.

WHEREFORE, Plaintiffs pray for the entry of judgment against ROLLING OAKS and BEVERLY HILLS, jointly and severally, for all amounts owed through the time of judgment and damages from the Defendants' failure to maintain the required amount of collateral, plus statutory interest, attorney's fees and the costs of this action, as well as such other and further relief as the Court may deem just and proper.

## Count IV – Breach of the Reimbursement Agreement

50.    This is an action against BHDC, ANCHOR PROPERTIES and RONALD J. COLLINS for breach of the Reimbursement Agreement.

51.    The Plaintiffs reallege the allegations contained in Paragraphs 1 through 25, as well as the allegations in Counts I, II and III above, as though fully set forth herein.

52.    Under the Reimbursement Agreement, Plaintiffs have provided the letter of credit as required to help secure loans to BEVERLY HILLS and ROLLING OAKS.

53.    Pursuant to the Reimbursement Agreement, Plaintiffs agreed to tender the letter of credit and BHDC agreed to promptly reimburse Plaintiffs for the following:

(a)    Any amounts drawn by National Bank for Cooperatives on the letter of credit, including all costs, fees, charges and expenses incurred by Plaintiffs in seeking reimbursement from BHDC, together with any and all amounts advanced by Plaintiffs, in their discretion, to ROLLING OAKS or BEVERLY HILLS to bring either company into compliance with the requirements of National Bank for Cooperatives;

(b)     Any amounts due and owing to Plaintiffs under the terms of service contracts to the extent not paid by ROLLING OAKS or BEVERLY HILLS when the same are due and payable under the terms of the service contract; and

(c)     All indebtedness, obligations and liabilities of any kind of ROLLING OAKS or BEVERLY HILLS to VEOLIA arising out of the refinancing Agreement or documents referenced herein.

54.     Section 1.7 of the Reimbursement Agreement states that any failure of BHDC to fully reimburse Plaintiffs for the above-referenced amounts constitutes a default, and Plaintiffs are not required to provide any notice to BHDC of said defaults. Despite the lack of a requirement therefore, Plaintiffs have provided written notices of these defaults to BHDC (Exhibit "K"), ANCHOR PROPERTIES (Exhibit "L") and RONALD J. COLLINS (Exhibit "M"), all of which exhibits are attached hereto and incorporated by reference.

55.     BHDC has defaulted under the Reimbursement Agreement by failing to pay amounts due and owing under the services agreements with Plaintiffs, which are currently the Beverly Hills OMM Agreement and the Rolling Hills OMC Agreement.

56.     As part of the Reimbursement Agreement, an Expenses Reimbursement agreement (attached hereto as Exhibit "C") was also executed by ROLLING OAKS, BEVERLY HILLS, BHDC, ANCHOR PROPERTIES and RONALD J. COLLINS with respect to certain obligations set forth therein.

57.     In addition, under Section 3.1 of the Reimbursement Agreement, BHDC granted a security interest to Plaintiffs in certain real property situated in Citrus County, Florida and all proceeds from the sale of said property.

58.    Section 3.2 requires that BHDC maintain a minimum collateral value for the property given to secure the Reimbursement Agreement at all times.

59.    BHDC has failed to provide Plaintiffs with an interest in collateral sufficient to maintain the minimum collateral value and, as such, has defaulted under the Reimbursement Agreement. BHDC has conveyed certain property which was the subject of Plaintiff's security interest and lien and has allowed the property upon which Plaintiffs have a lien and security interest to be diminished in value below the minimum collateral value.

60.    The failure to provide Plaintiffs with protected first priority interests in collateral sufficient to maintain the minimum collateral value constitutes a default under the Reimbursement Agreement.

WHEREFORE, Plaintiffs pray for the entry of judgment against BHDC, ANCHOR PROPERTIES, INC. and RONALD J. COLLINS, jointly and severally, for all amounts owed by ROLLING OAKS and BEVERLY HILLS through the time of judgment, as well as BHDC's other obligations under the Reimbursement Agreement, plus statutory interest, attorney's fees and the costs of this action, as well as such other and further relief as the Court may deem just and proper.

### Count V – Action to Foreclose Mortgage

61.    This is an action by PSG against BHDC and CITRUS COUNTY to foreclose the Mortgage encumbering certain real property situated in Citrus County, Florida.

62.    The Plaintiff realleges the allegations contained in Paragraphs 1 through 25 above, as well as all of the allegations in Counts I through IV above, as though fully set forth herein.

63.    Plaintiff seeks to foreclose the Mortgage previously referenced in this Complaint encumbering certain real property (the "Mortgaged Property") located in Citrus County, Florida.

The legal description of the real property is attached to the Mortgage, which is attached hereto as Exhibit "D" and incorporated herein by reference.

64.    On or about July 12, 1994, BHDC executed and delivered a real estate mortgage to and in favor of PSG.

65.    Under the Mortgage, BHDC pledged the Mortgaged Property as security for the letter of credit given on behalf of ROLLING OAKS by VEOLIA to National Bank for Cooperatives.  The Mortgage was also given to secure the obligations of BHDC under the Reimbursement Agreement.

66.    BHDC has defaulted under the Mortgage by allowing a certain portion of the Property to be acquired in eminent domain proceedings in Case No. 2003 CA 372, styled as *Citrus County v. Amsouth Bank, et al.*

67.    Under Paragraph 10, the Mortgage extends to encumber "any judgments, awards, damages and settlements hereafter rendered or paid and resulting from condemnation proceedings with respect to the mortgaged property or the taking of the mortgaged property or any part thereof under the power of eminent domain, and mortgagee may require that any sums payable to mortgagor and arising out of the power of eminent domain with respect to the property shall be applied to the indebtedness secured hereby."

68.    In violation of the terms of the Mortgage, BHDC received compensation for a portion of the Mortgaged Property purportedly acquired by Citrus County and refused to pay over to PSG the sums so received.

69.    In addition, the Mortgage secured BHDC's performance under the Reimbursement Agreement identified above.

70.    As previously set out in Count IV (which allegations are realleged and incorporated herein), BHDC has breached the Reimbursement Agreement and defaulted thereunder by failing to pay amounts due and owing to Plaintiffs under the terms of the service agreements with BEVERLY HILLS and ROLLING OAKS.

71.    As PSG was not named in the eminent domain action by Citrus County, PSG's mortgage interest in the Mortgaged Property, including certain parcels which Citrus County sought to condemn, is superior to the claim of Citrus County, and the County's interest therein is inferior to and subject to the superior interest of PSG.

WHEREFORE, PSG prays for the entry of judgment against BHDC and Citrus County for foreclosure and sale of the Mortgaged Property, including the parcels which Citrus County claims to have acquired from BHDC through eminent domain, to satisfy the obligations of BHDC under the Mortgage and Reimbursement Agreement through the time of judgment, plus statutory interest, attorney's fees and the costs of this action, as well as such other and further relief as the Court may deem just and proper.

### Count VI –Action for Temporary and Permanent Restraining Order or Injunction and Appointment of Receiver

72.    This is an action by Plaintiffs for a temporary and permanent restraining order and/or injunction freezing the bank accounts of ROLLING OAKS and BEVERLY HILLS and preventing the owners of the companies from disposing of any of the assets of the corporations and for the appointment of a receiver to conduct the business and financial operations of the corporations.

73.    The Plaintiffs reallege the allegations contained in Paragraphs 1 through 25 and the allegations of all previous Counts above, as though fully set forth herein.

74.    As a part of the operation of both ROLLING OAKS and BEVERLY HILLS, the companies accept payments from residents of Citrus County for providing utility and waste management services.

75.    ROLLING OAKS has been accepting said payments from the citizens of Citrus County and has failed to pay Plaintiffs for operating, maintaining and managing its water and sewer services.

76.    BEVERLY HILLS has been accepting said payments from the citizens of Citrus county but has failed to pay Plaintiffs for operating, maintaining and managing its solid waste hauling and collection services.

77.    The operation of the sewer and water and waste collection functions performed by Plaintiffs provides an important quasi-public service to the residents of Citrus County.  These services are necessary for the health and well-being of the residents of the county, but Plaintiffs cannot be expected to continue to perform these necessary services without compensation.

78.    If BEVERLY HILLS and ROLLING OAKS continue to fail or refuse to compensate Plaintiffs for the services performed, irreparable harm will occur in that Plaintiffs will have to cease providing these services and certain residents of Citrus County could suffer the loss of these necessary and essential quasi-public services.

79.    The continued operation of the water and sewer services provided by ROLLING OAKS is in the best interests of the residents of the Beverly Hills community in Citrus County.

80.    The continued operation of the waste collection services provided by BEVERLY HILLS is in the best interests of the residents of the Beverly Hills community in Citrus County.

81. BEVERLY HILLS must be restrained by this Court from continuing to collect payments from the citizens of Citrus County and then failing or refusing to fulfill its obligations to pay Plaintiffs for operating its waste collection system.

82. ROLLING OAKS must be restrained by this Court from continuing to collect payments from the citizens of Citrus County and then failing or refusing to fulfill its obligations to pay Plaintiffs for operating its water and sewer system.

83. BEVERLY HILLS and ROLLING OAKS informed the Plaintiffs in January of 2009 that said Defendants did not have the money to pay for the services of the Plaintiffs to operate the utilities owned and operated by BEVERLY HILLS and ROLLING OAKS, respectively.

84. Based on the above position, it appears that BEVERLY HILLS, ROLLING OAKS, BHDC, ANCHOR PROPERTIES and/or RONNIE J. COLLINS have misdirected, mismanaged, misused and/or improperly converted the payments made and entrusted to BEVERLY HILLS and ROLLING OAKS by the citizens of Citrus County for the purpose of operating these utilities.

85. Allowing this conduct to continue will result in a cessation of necessary utility services essential to the health and well-being of the customers involved and result in a permanent and irreparable injury to those customers, while at the same time causing substantial financial damage to the Plaintiffs.

86. The appointment of a receiver to conduct the business and financial operations of BEVERLY HILLS and ROLLING OAKS, including without limitation, the payment of obligations to Plaintiffs, is proper and necessary because Plaintiffs have a properly perfected lien on certain property of BHDC and the Mortgage provides for the appointment of a receiver.

Paragraph 7 of the Mortgage provides that if the Mortgage falls into default, Plaintiffs shall be entitled to the appointment of a receiver to take charge of all the mortgaged property and hold the same subject to the direction of a court of competent jurisdiction.

87.    In addition, because BEVERLY HILLS and ROLLING OAKS receive public funds for the waste management services and water and sewer services provided, there is a strong public interest in ensuring that these public funds are properly used and protected.

88.    The Plaintiffs stand willing and able to post such reasonable bond as may be required by the Court in connection with such injunctive relief.

WHEREFORE, the Plaintiffs request that this Court enter both temporary and permanent restraining orders and/or injunctions freezing the bank accounts of BEVERLY HILLS and ROLLING OAKS and prohibiting both of them from disposing of any of the assets of the corporations, together with the appointment of a receiver to conduct the business and financial operations of BEVERLY HILLS and ROLLING OAKS; and granting the receiver authority to pay all sums owed to Plaintiffs, and for such other and further relief as this Court deems just and proper, including without limitation, entering deficiency judgment and writs of possession.

LOWNDES, DROSDICK, DOSTER,
KANTOR & REED, P.A.

By/
James M. Spoonhour
Florida Bar No. 188581
S. Brendan Lynch
Florida Bar No. 0048124
215 N. Eola Drive
P.O. Box 2809
Orlando, Florida 32802
Tel.  407-418-6300
Fax. 407-843-4444
james.spoonhour@lowndes-law.com
Attorneys for Plaintiffs

- 15 -

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

I hereby swear and affirm that the foregoing allegations are true and correct.

Van A. Cates, Assistant Secretary and
Assistant General Counsel of
Veolia Water North America-South, L.L.C.
on behalf of VEOLIA WATER NORTH
AMERICA OPERATING SERVICES, LLC
and PROFESSIONAL SERVICES GROUP,
INC.

Sworn to and subscribed before me
this 28th day of January, 2009 by
Van A. Cates, who provided the
following identification:

Notary Public
Print Name: Nancy J. Moynika
Affix Notarial Seal here:

NANCY J. MOYNIHAN
MY COMMISSION # DD 716994
EXPIRES: September 20, 2011
Bonded Thru Budget Notary Services

0011554\134938\1203406\1

- 16 -